# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 2, 2010

## STATE OF TENNESSEE v. KEVIN MCDOUGLE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-04208      W. Mark Ward, Judge**

**No. W2009-01648-CCA-R3-CD  - Filed June 11, 2010**

The defendant, Kevin McDougle, was convicted by a Shelby County jury of aggravated robbery, a Class B felony, and two counts of aggravated assault, a Class C felony. He was subsequently sentenced to consecutive sentences of twelve years for the robbery and six years for each assault, resulting in an effective sentence of twenty-four years in the Department of Correction. On appeal, the defendant challenges only the imposition of consecutive sentences, specifically contending that the court erred in relying upon his juvenile record to establish that he was an offender whose record of criminal activity was extensive. Following review of the record, we find no error and affirm the sentences as imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Kevin McDougle.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On October 20, 2005, at approximately 5:30 p.m., the defendant entered Wing Grocery in Memphis and held multiple parties at gunpoint while robbing the store. The owner of the store, Mrs. Yu Hun Huang, was at the register working as a cashier, while her daughter-in-law, Li Yuan Weng, was assisting her. The defendant entered the store and

proceeded to select several items, passing in front of the surveillance camera multiple times. At some point, he approached the register and pulled out his gun. Mrs. Weng then ran to the back of the store and alerted her husband, Duffy Lam. Mr. Lam came toward the front of the store and witnessed the defendant choking his mother, Mrs. Huang, while pointing a gun at her neck and demanding money. The defendant left the store after taking $100 in cash and some cigarettes.

After the defendant left, the victims called the police, and Officer Willard Tate arrived and proceeded to view the surveillance video. Officer Tate also observed that the victims of the crime were very upset and afraid. He recognized the defendant from the videotape as someone he had seen in his ward. Subsequently, Mrs. Weng and Mr. Lam identified the defendant from a photographic lineup as the perpetrator of the crime. Mrs. Huang was unable to make a positive identification. The defendant denied that he was responsible for the crimes.

Based upon the foregoing actions, the defendant was indicted by a Shelby County grand jury for aggravated robbery and two counts of aggravated assault. Following a jury trial, he was convicted as charged. At the sentencing hearing, the defendant took the stand and testified that he believed he should receive a short sentence because he was not guilty of the crimes. He also testified that he was placed in special education classes as a child, based upon his difficulties in learning and paying attention. He also stated that he had been sent to a counselor because he was "retarded." The State presented no witnesses, choosing to rely upon the defendant's presentence report. The report, which was not challenged, indicated that the twenty-five-year-old defendant had multiple prior convictions. Specifically, the defendant had prior felony convictions for aggravated burglary, felon in possession of a weapon, aggravated assault, and three counts of aggravated robbery. He also had prior misdemeanor convictions for three counts of vandalism, two counts of assault, and a weapons offense. Further, the report indicated an extensive juvenile history, beginning at age eleven. That history is as follows:

> October 26, 1995: Age 11. The defendant was convicted of burglary of a building and evading arrest. He was referred to the Department of Human Services;
>
> January 25, 1997: Age 13. Criminal trespassing, vandalism under $500, and disorderly conduct. He was warned, counseled, and released to his mother;
>
> July 7, 1997: Age 13. Aggravated burglary. He was placed at Tall Trees, a juvenile community residential facility in Memphis;

July 24, 1997: Age 13. Aggravated burglary. He was again placed at Tall Trees;

August 13, 1998: Age 14. Criminal trespassing and disorderly conduct. He was warned, counseled, and referred to a community service program;

August 31, 1998: Age 14. Criminal trespassing. He was warned, counseled, and referred to a community service program;

September 18, 1998: Age 14. Robbery, possession of cocaine. The robbery charge amended to theft less that $500 and sustained as amended; the cocaine charge was dismissed without prejudice; and he was placed at the Shelby Training Center;

September 26, 1998: Age 14. Criminal trespassing. He was warned, counseled, and referred to a community service program;

March 4, 1999: Age 15. Assault. He was placed at a youth rehabilitation center;

September 14, 1999: Age 15. Escape from Department of Children's Services ("DCS") custody. No petition was filed;

June 4, 2000: Age 16. Escape from DCS custody. No petition was filed;

January 29, 2001: Age 17. Escape from DCS custody, burglary of a building, and theft of a vehicle. He remained in DCS corrective custody.

After hearing the evidence presented, the trial court sentenced the defendant to twelve years for the aggravated robbery and to six years for each aggravated assault. Additionally, based upon its finding that the defendant had an extensive criminal history, the court ordered that the sentences be served consecutively for an effective twenty-four-year sentence. Moreover, the court further ordered that the sentence be served consecutively to sentences received in two separate cases.

**Analysis**

On appeal, the defendant's sole contention is that the trial court erred in imposing consecutive sentencing. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401

(2006), Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45. In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and argument as to the sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee's sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in his own behalf about sentencing. T.C.A. § 40-35-210(b) (2006); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. *State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997). As relevant here, this section permits the trial court to impose consecutive sentences if the court finds that "[t]he defendant is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2) (2006). The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved" under the circumstances. T.C.A. § 40-35-102(1), -103(2). Whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

In imposing consecutive sentences in this case, the trial court found:

> I do think that consecutive sentencing is warranted because he is an offender. His record of criminal activity is extensive. And [that is] based both not only on the adult but on his juvenile record.
>
> And [there are] some cases that specifically say that I can consider his

juvenile record on the issue of consecutive sentencing with regard to finding him to be - - to have a record [that is] extensive.

One of those cases is *State v. Banks*. . . . Another case is *State v. Wallace*. . . . And the third case is *State v. Schmeiderer*. . . .

And when you add up his adult record and his juvenile record, he definitely fails within this category of a person whose record of criminal activity is extensive.

On appeal, the defendant argues that the trial court erred in using his juvenile record to establish that his record of criminal activity was extensive. He asserts that the three cases relied upon by the court as authority in allowing such reliance on the juvenile record, "while admitting the use of juvenile adjudications to establish an extensive criminal activity, do not hold on the advisability of such admission." The defendant also attempts to distinguish the three cases from his by asserting that "unlike the case at bar, each of these cases represented heinous crimes which included multiple consecutive sentencing factors." He states that "[j]uvenile court adjudications are not convictions, and they should not be treated as such for the purposes of supporting consecutive sentencing through a finding [of] extensive criminal activity."

After review, we conclude that the defendant's argument is misplaced as this court has specifically held that "a juvenile record of criminal conduct may properly be considered in assessing a suitable sentence after a felony conviction by an adult." *Adams*, 973 S.W.2d at 231. Additionally, his attempt to distinguish the cases relied upon by the trial court upon the ground that those cases involved findings of multiple factors under Tennessee Code Annotated section 40-35-115(b) is also misplaced. The argument ignores the well-established principle that the existence of a single category under the statute is sufficient to warrant the imposition of consecutive sentencing. Thus, the finding that an extensive criminal history exists will, alone, support consecutive sentencing, *see id*. at 231, and the fact that additional factors were found is not relevant. In each of the cases cited by the trial court, reliance on a defendant's juvenile history in finding an extensive criminal history was upheld. *See State v. Devin Banks*, No. W2005-02213-CCA-R3-DD (Tenn. Crim. App. at Jackson, Jul. 6, 2007) ("the appellant, as a juvenile, had a series of non-judicially adjudicated offenses. . . . Thus, the record supports the trial court's conclusion that [he] had an extensive criminal history"); *State v. Brandon Wallace*, No. W2005-02514-CCA-R3-CD (Tenn. Crim. App. at Jackson, Nov. 7, 2006) ("[t]he nineteen-year-old Appellant had numerous prior adjudications of delinquent acts as a juvenile which clearly supports the court's finding of an extensive criminal history."); *State v. Joel Richard Schmeiderer*, No. M1999-02546-CCA-R3-CD (Tenn. Crim. App. at Nashville, Nov. 9, 2000) ("[w]hile the Defendant's prior

criminal record consists entirely of juvenile offenses, it is certainly extensive . . . and the trial court's finding that the Defendant's record of criminal activity is extensive is adequately supported by the record, making consecutive sentences appropriate").

Having rejected the defendant's argument regarding consideration of the juvenile adjudications, review of the record reveals no abuse of discretion as the record overwhelmingly supports the imposition of consecutive sentencing. The presentence report reveals that the twenty-five-year-old defendant began a pattern of breaking laws at the age of eleven. As a juvenile, he committed numerous offenses including burglary, evading arrest, criminal trespassing, vandalism, disorderly conduct, aggravated burglary, theft, and assault. As an adult, the defendant has been convicted of six prior felonies, as well as six prior misdemeanors. We fail to see how this could not be considered an extensive criminal history. Because the court followed the statutory sentencing procedure and gave due consideration and proper weight to the relevant sentencing factors and principles, we will not disturb the decision to impose consecutive sentencing.

## CONCLUSION

Based upon the foregoing, the imposition of consecutive sentencing is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE